IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:11-CV-00042

| | |
|---|---|
| CARLOS BALDERRAMA-AVILES, HERIBERTO CAMACHO-CAMACHO, DAVID CAZARES-ARENAS, CESAR CERVANTES, JUAN FRIAS-MORENO, ELISEO HERNANDEZ-RODRIGUEZ, JUAN MANUEL LORENZO-PÉREZ, RODOLFO PEÑA-FRIAS, EPIGMENIO PÉREZ-NUÑEZ, JOSÉ MIGUEL PÉREZ-NUÑEZ, DANIEL REYES-MIRELES, JOSÉ LUIS TOVAR-GRANIZO, FERNANDO VALDEZ-JIMENEZ, JUAN MANUEL VARGAS-HERNANDEZ, and EDUARDO VARGAS-TAMAYO, <br><br>Plaintiffs, <br>v. <br><br>SHADY RIDGE CORPORATION, <br><br>Defendant. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

**PRELIMINARY STATEMENT**

1. Plaintiffs are Mexican farmworkers who were admitted to the United States on H-2A visas to work for Defendant, a sweet potato grower, in North Carolina.

2. As set forth in Claim I, Defendant violated the Fair Labor Standards Act (the "FLSA") by failing to pay each Plaintiff at least the required minimum hourly wage for every

compensable hour of labor performed in each work week.  Under this Count, Plaintiffs seek to recover their unpaid wages, liquidated damages, and attorneys' fees.

3. As set forth in Claim II, Defendant also breached Plaintiffs' employment contracts by failing to provide Plaintiffs with the agreed-upon minimum hours of work.  Under this Count, Plaintiffs seek to recover damages that arose from breaches of Plaintiffs' employment contracts.

## JURISDICTION

4. This Court has jurisdiction of this matter pursuant to:  28 U.S.C. § 1331 (federal question); 28 U.S.C. §1337 (commerce); and 29 U.S.C. § 216(b) (FLSA).

5. This Court has supplemental jurisdiction over state law claims because they are so inextricably related to the Plaintiffs' federal claims under the FLSA that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant Shady Ridge Corporation is a resident of this district.

## PARTIES

7. Plaintiffs are citizens of Mexico who were lawfully admitted to the United States in August 2009 as temporary foreign agricultural workers under the H-2A program.  At all times pertinent to this action, they were employed in the production of goods for commerce.

8. As required by 29 U.S.C. § 216(b), each Plaintiff has given written consent to be a party to this action.  A copy of each Plaintiff's FLSA consent form is attached as Exhibit A.

9. Defendant Shady Ridge Corporation ("Shady Ridge") is a North Carolina corporation with headquarters in Sampson County where Defendant is engaged in the production of goods for commerce.

10. At all times pertinent to this action, Shady Ridge was Plaintiffs' employer, as defined by the FLSA, 29 U.S.C. § 203(d), and the H-2A regulations, 20 C.F.R. § 655.100(c).

## THE STATUTORY AND REGULATORY SCHEME OF THE H-2A PROGRAM

11. The H-2A Program was created by 8 U.S.C. § 1188. At all times pertinent to this action, it was implemented pursuant to regulations published in 73 Fed. Reg. 77207 (Dec. 18, 2008) and codified at 20 C.F.R. §§ 655.9-655.119 (2009). The H-2A Program authorizes the temporary, lawful admission of residents of foreign countries to perform agricultural labor that is temporary or seasonal in nature for a specific employer.

12. An agricultural employer may request temporary foreign workers under the H-2A program ("H-2A workers") if the U.S. Department of Labor ("DOL") certifies that there are not enough U.S. workers ready and available to perform the jobs to be filled by H-2A workers, and the hiring of H-2A workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

13. Employers desiring to employ H-2A workers must file an application for temporary labor certification with the DOL that includes a job offer in compliance with 20 C.F.R. §§ 655.104 and 653.501. 20 C.F.R. § 655.101 (2009).

14. The job offer is commonly known as the clearance order. The terms and conditions of the clearance order constitute an employment contract between the employer and the H-2A workers. 20 C.F.R. § 655.104(q).

15. Agricultural employers are required to pay H-2A workers the higher of the "adverse effect wage rate" ("AEWR"), the prevailing hourly wage or piece rate, or the federal or state minimum wage for each hour of work performed. 20 C.F.R. § 655.108(a).

16. In 2009, the federal minimum wage was $7.25 per hour, effective July 24, 2009.

17. If an H-2A worker is paid on a piece-rate basis, and at the end of each pay period the piece rate does not result in earnings of at least the appropriate hourly rate, an H-2A employer is required to supplement the workers' wages so that they meet the appropriate hourly rate. 20 C.F.R. § 655.104(l)(2)(i).

18. The employer must offer the H-2A worker employment for a total number of hours equal to at least three-fourths of all workdays in the work contract period, beginning with the first workday after the worker's arrival at the place of employment, and ending on the expiration date on the work contract. 20 C.F.R. § 655.104(i)(1).

19. The work contract period may only be shorted by agreement of the parties and with approval of an H-2A Certifying Officer designated by the Office of Foreign Labor Certification ("OFLC"). 20 C.F.R. § 655.104(i)(1).

## FACTS

20. In February 2009, Defendant Shady Ridge submitted a request for H-2A workers through clearance order number NC7265820 ("the Clearance Order"), requesting 206 agricultural workers. A copy of the Clearance Order is attached to this complaint and labeled as Exhibit B.

21. Defendant, through its agents in Mexico, offered Plaintiffs employment in farm work in Sampson County, North Carolina under the terms of the Clearance Order.

22. Plaintiffs accepted Defendant's offer of employment, and in August 2009, Plaintiffs came to North Carolina from their homes in Mexico on H-2A visas to work for Defendant. Plaintiffs' work for Defendant included cultivating and harvesting sweet potatoes.

23. At the beginning of each work day, Defendant transported Plaintiffs on a school bus from their labor camp lodgings to a building located at their farming operation ("the shop") prior to transporting them to the fields to work.

24. Defendant often required Plaintiffs to wait on the bus at the shop or near the field for up to thirty (30) minutes daily before commencing work. During this time the foreman received instructions from Defendant or the field was prepared for harvesting.

25. Defendant failed to compensate Plaintiffs for this compensable time spent waiting at the shop or in the field at the beginning of each workday.

26. During the course of the workday, Plaintiffs were given one ticket for each bucket of sweet potatoes harvested. At the end of each workday, Defendant transported Plaintiffs back to the shop, where Plaintiffs spent up to forty-five (45) minutes counting tickets with the foreman in order for Defendant to record the number of buckets picked that day.

27. Defendant failed to compensate Plaintiffs for this compensable time at the shop at the end of each workday.

28. Under the terms of the Clearance Order contract, Plaintiffs' hourly wage was to be no less than $7.25 per hour.

29. Defendant paid Plaintiffs on an hourly basis at a rate of $7.25 for cultivating sweet potatoes for the first few weeks of work.

30. Defendant paid Plaintiffs a piece rate of forty cents ($.40) per five-eighths (5/8) bushel bucket for harvesting sweet potatoes beginning their second week of work.

31. Under this piece rate scheme, Plaintiffs were not able to harvest enough sweet potatoes to equal or surpass earnings of $7.25 for each compensable hour.

32. As a result, Defendant failed to compensate Plaintiffs the required hourly wage for all compensable hours.

33. The Clearance Order provided that Defendant would offer Plaintiffs a total of forty (40) hours a week for the duration of the period of employment.

34. In general, Plaintiffs worked all hours offered by Defendant.

35. During the time period when Plaintiffs worked for Defendant, from late August to late October, Defendant offered Plaintiffs significantly less than 40 hours per week.

36. The Clearance Order provided that the period of employment would last until November 25, 2009.

37. Plaintiffs were able and willing to work until November 25, 2009.

38. The last day that Defendant offered Plaintiffs work was October 24, 2009.

39. Defendant and Plaintiffs did not mutually agree to a shortened contract period, and Defendant did not seek approval of the OFLC designated Certifying Officer to shorten the work contract period.

40. Plaintiffs were told that no more work was available, and Defendant arranged for Plaintiffs' return transportation by bus to their homes in Mexico. Plaintiffs traveled to Mexico on October 26, 2009.

## CLAIM I: FAIR LABOR STANDARDS ACT

Plaintiffs incorporate the allegations contained in the preceding paragraphs by reference. This claim arises under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

41. Defendant failed to pay Plaintiffs at least the required minimum hourly wage for every compensable hour of labor performed in each work week, as required by 29 U.S.C. § 206(a).

42. The violations set forth in this Claim resulted, in part, from Defendant's practice of paying Plaintiffs based on a piece rate, without regard to the number of hours Plaintiffs worked.

43. The violations set forth in this Claim also resulted, in part, from Defendant's failure to record and pay Plaintiffs for all compensable time worked.

44. As a result of Defendant's violations of the FLSA set forth in this Claim, Plaintiffs have suffered damages, and pursuant to 29 U.S.C. § 216(b), are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the minimum wage.

## CLAIM II: BREACH OF THE H-2A CONTRACT

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference. This claim arises out of Defendant's breach of the provisions of the Clearance Order, as set forth in Exhibit B.

45. Defendant breached the Clearance Order by failing to provide Plaintiffs with the minimum number of guaranteed hours of work.

46. Defendant also breached the Clearance Order by failing to provide Plaintiffs with work for the full duration of the contract.

47. As a result of Defendant's breaches of the Clearance Order, Plaintiffs suffered economic injury.

48. Defendant is liable to Plaintiffs for the damages that arose from Defendant's breach, including unpaid wages and prejudgment interest.

## JURY DEMAND

49. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

50. Plaintiffs respectfully pray that this Honorable Court enter an order:

    a. finding that Defendant failed to compensate them for all hours of work in violation of the FLSA;

    b. enjoining Defendant from continuing to violate the Fair Labor Standards Act;

    c. awarding Plaintiffs their unpaid wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

    d. awarding Plaintiffs damages that arose from the breach of the H-2A Contract;

    e. awarding Plaintiffs pre- and post-judgment interest as allowed by law;

    f. awarding Plaintiffs the costs of this action and reasonable attorneys' fees;

    g. awarding Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully Submitted on this 8th day of February, 2011.


/s/ Caroline C. Smiley
Attorney for Plaintiffs
Legal Aid of North Carolina
Farmworker Unit
P.O. Box 26626
Raleigh, NC 27611
CarolineS2@legalaidnc.org
Telephone (919) 856-2180
Fax (919) 856-2187
NC State Bar No. 40077


/s/ Mary Lee Hall
Attorney for Plaintiffs
Legal Aid of North Carolina
Farmworker Unit
P.O. Box 26626
Raleigh, North Carolina 27611
MaryLeeH@legalaidnc.org
Telephone (919) 856-2180
Fax (919) 856-2187
NC State Bar No. 16347